| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> SHAFEEQ AMEER MALIK MUHAMMAD, ) <br> ) <br> Defendant. ) <br> _____ ) | **O R D E R** |

**THIS MATTER** is before the Court on remand from the United States Court of Appeals for the Fourth Circuit for further consideration of the Defendant's Motion for Amended Judgment under The First Step Act of 2018 [Doc. 182; as amended by Doc. 183] in light of the Fourth Circuit's decisions in <u>United States v. Lancaster</u>, 997 F.3d 171 (4th Cir. 2021), and <u>United States v. Norman</u>, 935 F.3d 232 (4th Cir. 2019). [<u>See</u> Doc. 194].

**I.    BACKGROUND**

In March 2006, the Defendant Shafeeq Ameer Malik Muhammad was charged with one count of conspiracy to possess with intent to distribute 50 grams or more of cocaine base, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A) ("Count One") [Doc. 3], a charge which subjected him to a

mandatory term of imprisonment of not less than 10 years nor more than life. See 21 U.S.C. § 841(b)(1)(A). In April 2006, the Defendant pled guilty pursuant to a written Plea Agreement to Count One "as set forth in the Bill of Indictment" and admitted to being in fact guilty as charged in that Count. [See Doc. 28: Plea Agreement at ¶ 1; see also Doc. 29: Rule 11 Inquiry at 3 ¶ 11, 7 ¶ 27]. The Government did not file a Bill of Information or a Superseding Bill of Indictment, and the Defendant did not plead to a lesser included offense.

While the Defendant's offense of conviction was under §§ 846 and 841(b)(1)(A), the parties and the sentencing Court[1] appeared to proceed as though the Defendant had pled pursuant to 21 U.S.C. §§ 846 and 841(b)(1)(B).  In the Plea Agreement, the parties stipulated that the amount of cocaine base that was known to or reasonably foreseeable by the Defendant was at least 5 grams but less than 20 grams.  [Doc. 28: Plea Agreement at ¶ 6a].  This is obviously less than the 50-gram threshold amount for sentencing under § 841(b)(1)(A) that was applicable at the time. The Presentence Report made clear that the Defendant was involved in only

---

[1] The Honorable Lacy H. Thornburg, United States District Judge, presiding.  Upon Judge Thornburg's retirement, this matter was reassigned to the undersigned.

2

one drug transaction, a sale to a confidential source of 40.8 grams of crack cocaine on July 20, 2005. [Doc. 63: PSR at 5 ¶ 18]. This was also less than the 50-gram threshold for a § 841(b)(1)(A) conviction.

Based on his prior convictions—namely, a 1990 New Jersey conviction for aggravated assault with a deadly weapon, a 1995 New Jersey conviction for aggravated assault, and a 2002 North Carolina conviction for possession with intent to sell/deliver marijuana—the Defendant was determined to be a career offender. [Id. at 7 ¶ 34]. Employing the lower drug quantity as stipulated by the parties, the Court calculated the Defendant's Guidelines range based on the statutory range that would apply had the Defendant been adjudicated guilty under § 841(b)(1)(B) rather than (b)(1)(A). The Court calculated the Defendant's guidelines range to be 188 to 235 months and imposed a sentence of 190 months' imprisonment plus four years of supervised release.[2] [Doc. 57: Judgment]. The Judgment was entered on April 27, 2007. [Id.].

In 2010, Congress passed the Fair Sentencing Act of 2010, Pub. L. No. 111-220, which increased the quantity of cocaine base required to trigger the enhanced penalties of Section 841. Specifically, Section 2 of the Act

---

[2] The four-year term of supervised release also reflects a sentence pursuant to § 841(b)(1)(B) rather than (b)(1)(A).

3

raised the (b)(1)(A) threshold from "50 grams" to "280 grams" and the (b)(1)(B) threshold from "5 grams" to "28 grams." Section 3 eliminated the mandatory minimum for simple possession of cocaine base under 21 U.S.C. § 844(a). Congress did not apply these changes retroactively to defendants sentenced before the Act's passage. Accordingly, the Defendant could not obtain relief under the Fair Sentencing Act. Likewise, the Defendant was ineligible for relief pursuant to the retroactive Guidelines amendments 706, 750 and 782 because of his career offender status. [See Docs. 129, 157].

On December 21, 2018, the First Step Act of 2018, Pub. L. No. 115-391, was enacted. Section 404 of the Act gave retroactive effect to the changes made by Sections 2 and 3 of the Fair Sentencing Act of 2010. In March 2019, the Defendant sought a reduction of his sentence pursuant to Section 404 of the First Step Act, arguing that because he had been subjected to § 841(b)(1)(B)'s penalty scheme, he should receive a reduced sentence in accordance with § 841(b)(1)(C)'s statutory penalties, which provide no minimum term of incarceration and a maximum term of 20 years, along with a three-year minimum term of supervised release. [Docs. 182, 183]. The Defendant did not challenge his career offender status in his motion.

4

The Government agreed that the Defendant was eligible for sentencing relief but requested that the Court deny his motion because of his extensive and persistent misconduct in prison. [Doc. 184].

On July 12, 2019, the Court entered an Order addressing the Defendant's First Step Act motion. [Doc. 186]. While finding that the Defendant was technically eligible for a reduced sentence, the Court in its discretion declined to reduce his sentence in light of his extensive criminal history and disciplinary record while in the Bureau of Prisons. [Id.].

The Defendant appealed. [Doc. 187]. The Defendant did not challenge his career offender status on appeal. [See Doc. 194 at 5 (noting that "Muhammad does not challenge his career offender enhancement")].

While the appeal was pending, the Defendant was released from prison. He began his term of supervised release on February 5, 2021. On May 12, 2021, the Defendant's supervising probation officer filed a petition for the revocation of his supervised release based on numerous violations of the terms of supervision. [Doc. 192]. A warrant was issued for the Defendant's arrest, which warrant remains outstanding.

On August 3, 2021, the Fourth Circuit Court of Appeals vacated this Court's Order denying relief under the First Step Act. [Doc. 194]. In its decision, the Court of Appeals held that this Court committed plain error

5

Case 1:06-cr-00013-MR-WCM   Document 196   Filed 09/16/21   Page 5 of 16

"when it declined to recalculate the [Defendant's] Guidelines range without the career offender enhancement imposed at his original sentencing, which had been invalidated by intervening, nonretroactive authority in United States v. Norman, 935 F.3d 232 (4th Cir. 2019)."[3] [Doc. 194 at 5]. The Fourth Circuit's mandate issued on August 25, 2021. [Doc. 195]. This matter therefore is ripe for review.

## II. DISCUSSION

Section 404 of the First Step Act authorizes district courts to "impose a reduced sentence" for certain "covered offense[s]." First Step Act, § 404(b), 132 Stat. at 5222. Section 404(a) of the Act defines a "covered offense" as "a violation of a Federal criminal statute, the statutory penalties for which were modified by Section 2 or 3 of the Fair Sentencing Act of 2010 . . . that was committed before August 3, 2010." Id. § 404(a). Section 404(b) then provides that the court "may . . . impose a reduced sentence as if Section 2 or 3 of the Fair Sentencing Act of 2010 . . . were in effect at the time the covered offense was committed." Id. § 404(b). The First Step Act

---

[3] Notably, this Court entered its Order denying the Defendant relief under the First Step Act on July 12, 2019; the Court of Appeals did not decide Norman until over a month later, on August 15, 2019.

makes clear, however, that any such decision is a matter of the court's discretion.  Id. § 404(b), (c).

When presented with a motion for relief under Section 404 of the First Step Act, a district court must determine whether the sentence qualifies for review on the merits.  United States v. Gravatt, 953 F.3d 258, 262 (4th Cir. 2020).  Here, the Defendant undoubtedly qualifies for review:  1) he was sentenced for a violation of a "covered offense"[4]; 2) his motion for a reduction in sentence is addressed to the court that imposed the sentence; and 3) the sentence has not been previously reduced under the First Step Act.

Having determined that the Defendant's sentence qualifies for review on the merits, the Court must now determine whether to exercise its discretion to impose a reduced sentence as if the Fair Sentencing Act were in effect at the time the covered offense was committed.  First Step Act, § 404(b), 132 Stat. at 5222.  "The stated policy governing the exercise of this discretion is to bring a sentence that is qualified for reduction 'in line' with a sentence that the court would have imposed under the Fair Sentencing Act

---

[4] As previously noted, it appears that the parties and the sentencing judge treated this case as one under § 841(b)(1)(B), even though the Defendant entered a guilty plea and was convicted under § 841(b)(1)(A).  Whether the sentence was imposed under § 841(b)(1)(A) or § 841(b)(1)(B), however, is irrelevant to the determination of the Defendant's eligibility for First Step relief, as both are "covered offenses" under Section 404(a).

had it been in effect." United States v. Lancaster, 997 F.3d 171, 175 (4th Cir. 2021).

The Court must begin its analysis with the calculation of the appropriate Guidelines range and a "brief reconsideration" of the 18 U.S.C. § 3553(a) factors. Lancaster, 997 F.3d at 175. In calculating the Guidelines range, the Court "must *correct* any original Guidelines errors and apply intervening case law made retroactive to the original sentence." United States v. Collington, 995 F.3d 347, 355 (4th Cir. 2021) (emphasis in original). In considering the § 3553(a) factors, the Court may consider relevant post-sentencing conduct, such as any disciplinary infractions incurred or rehabilitative efforts undertaken while the Defendant was incarcerated. Lancaster, 997 F.3d at 175; United States v. White, 984 F.3d 76, 90 (4th Cir. 2020). The Fourth Circuit has stressed that this process is not a "plenary resentencing," nor is it "intended to be a complete or new relitigation of Guidelines issues or the § 3553(a) factors." Lancaster, 997 F.3d at 175; Collington, 995 F.3d at 358 ("the First Step Act contemplates a robust resentencing analysis, albeit not a plenary resentencing"). Rather, as the Fourth Circuit has explained:

> the scope of the analysis is defined by the gaps left
> from the original sentencing to enable the court to
> determine what sentence it would have imposed
8

> under the Fair Sentencing Act in light of intervening circumstances. If, after conducting the analysis, the court determines that the sentence would not be reduced, then no relief under the First Step Act is indicated.

Lancaster, 997 F.3d at 175 (emphasis added). Even though this is not a plenary resentencing, this proceeding must still be both procedurally and substantively reasonable. Collington, 995 F.3d at 360.

The Court now turns to the calculation of the Defendant's revised advisory Guidelines range. In previously addressing the Defendant's request for relief, this Court had no occasion to revisit the Defendant's career offender designation, as the Defendant did not challenge it. In fact, he conceded that this designation was correct. [See Doc. 183 at 10 n.6 ("Although Mr. Muhammad is a career offender, his violent crimes were committed in his 20s.")]. And, at the time that the Defendant's First Step request was first under consideration by the Court, there was no Fourth Circuit decision that would have called this designation into question: Norman was decided more than a month after the Court entered its decision denying the Defendant First Step relief.[5]

---

[5] While the District Court's lack of clairvoyance may be "plain," it would appear to be a wholesale rewriting of the "plain error" rule to expect a district court to anticipate circuit court decisions that may be issued in the future.

9

Subsequent to this Court's decision, the Fourth Circuit issued a series of decisions that led to the remand of this matter for further consideration. First, in United States v. Chambers, the Fourth Circuit stated that "any Guidelines error *deemed retroactive* . . . must be corrected in a First Step resentencing." 956 F.3d 667, 668 (4th Cir. 2020). The Fourth Circuit reiterated that holding in Collington. See Collington, 995 F.3d at 355 ("district courts must correct original Guidelines errors and apply intervening case law *made retroactive* to the original sentence." (emphasis added)). The Court of Appeals, however, then issued its decision in Lancaster, in which the Court concluded that, notwithstanding its apparent emphasis on the retroactive nature of the Guidelines error to be corrected, Chambers requires the recalculation of a defendant's advisory Guidelines range in light of *all* "intervening case law," whether or not such law has been deemed retroactively applicable. See Lancaster, 997 F.3d at 175.

The Court therefore will endeavor to calculate the Defendant's Guidelines range in light of the intervening changes in the law that have occurred since the Defendant's sentencing in April 2007. A threshold issue in this analysis is whether the Defendant qualifies as a career offender under

10

U.S.S.G. § 4B1.1.[6] To be deemed a career offender, a defendant must be convicted of a controlled substance offense and have at least two prior convictions for controlled substance offenses or violent felonies. U.S.S.G. § 4B1.2.

The Fourth Circuit's Norman decision indicates that the Defendant no longer qualifies as a career offender. See Norman, 935 F.3d at 238 (holding that an § 846 conspiracy conviction is not a "controlled substance offense" as defined by U.S.S.G. § 4B1.2(b)).[7] Moreover, applying intervening

---

[6] The Defendant has not challenged his career offender status, and the Court of Appeals acknowledged this fact in its remand. Without making any finding as to whether the Defendant actually is or is not a career offender, in accord with the rule of lenity the Court will calculate the lower Guidelines range that might apply to the Defendant for the purpose of analyzing whether the Defendant should be granted discretionary relief.

[7] Section 4B1.2 of the Guidelines defines a controlled substance offense as "an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense." U.S.S.G. § 4B1.2(b). Application Note 1 of the commentary clarifies that "controlled substance offenses" "include the offenses of aiding and abetting, *conspiring*, and attempting to commit such offenses." U.S.S.G. § 4B1.2 cmt. n.1 (emphasis added). Notwithstanding the wording of this provision, the Court in Norman held that a drug conspiracy conviction under § 846 is not a "controlled substance offense." This interpretation of § 4B1.2 is interesting in light of the fact that this section expressly states that "the term 'controlled substance offense' means an offense under federal . . . law . . . that prohibits . . . the possession of a controlled substance . . . with the intent to . . . distribute . . ." and "include[s] the offense[ ] of . . . conspiring . . . to commit such offense[]" USSG § 4B1.2 and n.1. That defines only one crime: a violation of § 846. Yet the Court in Norman proceeded through a complex categorical analysis to hold that this category of one is actually a category of none. For this reason, other courts of appeal have held that the plain text of U.S.S.G. § 4B1.2, as further defined by Application Note 1, includes

11

caselaw, it appears that the Defendant no longer has the requisite predicate convictions to support a career offender designation. See United States v. Garcia-Jimenez, 807 F.3d 1079, 1081 (9th Cir. 2015) (holding that New Jersey aggravated assault is not a crime of violence for purposes of career offender); United States v. Simmons, 649 F.3d 237, 243 (4th Cir. 2011) (en banc) (addressing whether a conviction under North Carolina's Structured Sentencing Act constitutes a felony drug offense). Therefore, the Court will proceed to calculate the Defendant's Guidelines range without the career offender enhancement and based on drug quantity alone.

Since the prior career offender determination made the drug quantity calculation irrelevant in the original sentencing, the Court recognizes that the actual drug quantity for which the Defendant can be held responsible could be considered a "gap that needs to be filled to calculate an appropriate Guidelines range," as dictated by the Court in Lancaster. 997 F.3d at 176.

---

§ 846 drug conspiracies. See United States v. Lewis, 963 F.3d 16, 24 (1st Cir. 2020), cert. denied, No. 20-7387, 2021 WL 2519339 (U.S. June 21, 2021); United States v. Tabb, 949 F.3d 81, 87 (2d Cir. 2020), cert. denied, No. 20-579, 2021 WL 2519097 (U.S. June 21, 2021). As such, the Fourth Circuit's holding in Norman would appear to represent a departure from ordinary textualism. It is also a clear departure from the Circuit's own precedent. See Norman, 935 F.3d at 242-43 (King, J. concurring in part and dissenting in part) (noting that in United States v. Kennedy, 32 F.3d 876 (4th Cir. 1994), the Fourth Circuit held that § 846 is a controlled substance offense, a holding which the Norman majority referred to merely as an "assumption"). Nevertheless, Norman constitutes binding precedent, and the Court is obliged to follow it.

12

Case 1:06-cr-00013-MR-WCM   Document 196   Filed 09/16/21   Page 12 of 16

The offense conduct outlined in the PSR refers to one specific transaction wherein the Defendant sold 40.8 grams of crack cocaine. [See Doc. 63: PSR at 5 ¶ 18].  The PSR, however, as accepted by the sentencing court, stated: "[B]ased on the parties['] drug quantity stipulation outlined in the plea agreement, the defendant will only be held accountable for at least 5 grams but less than 20 grams of crack cocaine." [Id. at 6 ¶ 21].

As the Court noted in its prior Order denying the Defendant's motion for a reduced sentence [Doc. 186], the Plea Agreement curiously provided a joint recommendation that the Defendant be held responsible for only 5 to 20 grams of crack cocaine. This is inexplicable and may give the appearance of impermissible fact bargaining, except for the fact that at the time of the Defendant's original sentencing the difference between 20 grams and 40.8 grams was ultimately irrelevant to the calculation of the Defendant's Guidelines range.  Since the Defendant pled to the conspiracy charge based solely on this one drug transaction, and it is undisputed that the substance conveyed was 40.8 grams of crack cocaine, the Defendant is either responsible for 40.8 grams or he is actually innocent of the offense.  There is no middle ground on which the Court could find that the transaction involved only 5 to 20 grams of crack. For these reasons, the Court disregards

13

the parties' inexplicable joint recommendation regarding drug quantity as stated in the Plea Agreement.

Using 40.8 grams as the relevant drug quantity, the Defendant's base offense level would be 24. With a three-level reduction for acceptance of responsibility, his total offense level, calculated without the career offender designation, would be 21. Given the number of criminal history points the Defendant had accrued (15), the calculation of the Defendant's criminal history category remains unchanged. [See Doc. 63: PSR at 14 ¶ 60]. Based on a Total Offense Level of 21 and a Criminal History Category of VI, the Court concludes that, taking into account all proper intervening factors, the Defendant's advisory Guidelines range calls for a term of incarceration between 77 and 96 months.

The Court next turns to the relevant § 3553(a) factors and the Defendant's post-sentencing conduct. As the Court noted in its original Order denying the Defendant relief under the First Step Act [Doc. 186 at 8-9], as of February 2019, the Defendant had incurred 36 disciplinary infractions during 11 years in BOP custody, including multiple instances of fighting, threatening bodily harm, disruptive conduct, engaging in sexual acts, and assaulting without serious injury. [See Doc. 180: Supp. PSR at 2-3]. Further, within months of the Defendant's release from custody, the Defendant's

14

supervising probation officer had filed a petition for revocation of supervised release based on various violations, including absconding from supervision. [Doc. 192 at 2]. The warrant for that petition remains unserved, thus indicating that the Defendant is a fugitive. The Defendant's behavior during and after his imprisonment demonstrates that the rehabilitative efforts of incarceration have been insufficient to redirect the Defendant. To the extent that post-sentencing actions of a defendant are relevant in a First Step analysis, this is a classic case in which the Court is led in its discretion to deny relief. The Court has taken into account all of the factors, including the intervening changes to the law, the Defendant's extensive criminal history, his revised Guidelines range, his arguments for leniency, and his regrettable record during and after his incarceration, and concludes that relief should be denied.

In his original motion, the Defendant requested a reduction of his term of supervised release to three years in accordance with the provisions of § 841(b)(1)(C). For the reasons discussed herein, the Court concludes that the Defendant is entitled to a reduction in his sentence only to the extent as provided for in § 841(b)(1)(B). Accordingly, the Defendant's term of supervised release remains unchanged. See 21 U.S.C. § 841(b)(1)(B) (requiring a minimum term of at least four years of supervised release).

**IT IS, THEREFORE, ORDERED** that the Defendant's Motion for Amended Judgment under The First Step Act of 2018 [Doc. 182; as amended by Doc. 183] is in all respects **DENIED**. The terms and conditions of the Defendant's Judgment [Doc. 57] shall remain in full force and effect.

The Clerk is directed to provide copies of this Order to the Defendant, counsel for the Defendant, the United States Attorney, the United States Marshals Service, the United States Probation Office, and the United States Bureau of Prisons.

**IT IS SO ORDERED.**

Signed: September 16, 2021

Martin Reidinger
Chief United States District Judge